FILED

2016 Aug-01  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BRENDA COLEMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:15-CV-01137-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | | |
| **Defendant.** | | |

## MEMORANDUM OF DECISION

Plaintiff Brenda Coleman brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

On September 20, 2012, Plaintiff filed her application for a period of disability and DIB with a concurrent application for SSI. (Tr. 16). Both applications alleged that her disability began February 1, 2012. (*Id.*). Plaintiff's claims were initially denied by the Social Security Administration on January 2, 2013. (*Id.*). After Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), a hearing was conducted on April 28, 2014. Plaintiff's applications were denied on September 22, 2014. (Tr. 16, 43, 37).  The ALJ determined that,

contrary to her claims, Plaintiff had not been under a disability as defined in the Act since February 1, 2012, the alleged onset date. (Tr. 37). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1). 42 U.S.C. §§ 405(g) and 1383(c).

## II.    Facts

At the time of the hearing, Plaintiff was fifty-three years old. (Tr. 301). She had completed high school and had additional training qualifications including registration as an apartment manager, a real estate license, and telecommunicator/911 training. (Tr. 49; Gov. Mem. 2). Plaintiff stopped working in December 2011, and alleged in her hearing that she has been unable to engage in substantial gainful activity ("SGA") since February 1, 2012 due to impairments. (Tr. 49).[1] Plaintiff reported that she was limited in her working ability due to diabetes, hypertension, arthritis, temperomandibular joint dysfunction ("TMJ") and depression. (Tr. 18). She has past relevant work as a dispatcher/order clerk, a 911 operator/telecommunicator, a billing and loan clerk, and a gaming manager. (Tr. 36).

Plaintiff has a history of hypertension, poorly controlled diabetes mellitus—type II, and obesity. (Tr. 310-311, 369). She complains of tingling and sometimes numbness in her feet, and osteoarthritis that affects her ankles, knees, hands, and shoulders.[2] Plaintiff claims that the pain in her jaw, hands, legs, and most joints is constant, and prevents her from lifting, squatting, using her hands, and walking more than half a block without rest. (Tr. 19). She has no difficulty with "bathing, shaving, feeding herself or using the toilet." (*Id*.). While her daughters help her with

---

[1] However, Plaintiff gave a non-impairment related reason for leaving work in the Disability Report: She didn't have anyone to stay with her youngest daughter during work hours. (Tr. 19).

[2] Plaintiff claims that she has to keep her feet elevated, though no physician record suggested elevation. (Tr. 21).

most household chores, Plaintiff sometimes cooks, helps with the laundry, and drives to shop for groceries. (*Id.*). She also has a pet she cares for. (*Id.*).

Dr. Konstantins Kociasvili treated the Plaintiff from April 5, 2011 to August 24, 2011. On April 5, 2011, Plaintiff was admitted to Stringfellow Memorial Hospital with complaints of "general weakness, not feeling well, uncontrolled diabetes mellitus—type II, and severe abdominal pain" (Tr. 28, 303). Her hospital stay was uneventful, and Plaintiff was discharged on April 7, 2011, with diagnoses including "poorly controlled diabetes mellitus, hyperglycemia, urinary tract infection, obesity, and hypertension." (Tr. 29, 303).[3]  On August 12, 2011, Plaintiff arrived at the emergency room complaining of abdominal pain. She underwent a laparoscopic cholecystectomy, and was discharged on August 16, 2011. (Tr. 29, 309).

Dr. Muzamil Babiker treated the Plaintiff from August 14, 2012 to July 29, 2013. (Tr. 29). Plaintiff visited Dr. Babiker on August 14, 2012 complaining of jaw pain, bruising on her left foot, and numbness and tingling in her hands. (Tr. 338). Dr. Babiker diagnosed her with diabetes mellitus, hypertension, obesity, depression, and left side TMJ.  (Tr. 339). Plaintiff returned to Dr. Babiker's office again on August 27 and September 6, 2012 for follow-up appointments, but no significant changes were made to her care plan. (Tr. 337).

Plaintiff saw Dr. Babiker at Cleburne Medical Clinic on October 22, 2012, reporting symptoms of multiple joint pain. (Tr. 347, 389). Under the musculoskeletal portion of the record, Dr. Babiker noted that Plaintiff exhibited "no clubbing, cyanosis, or edema. Grossly normal motor and strength." (*Id.*). Regarding the subject "neurological" he recorded, "No focal deficit." (*Id.*). After this visit, he added unspecified multiple site osteoarthritis to her diagnoses.

---

[3] Dr. Kociasvili includes diabetic neuropathy in Plaintiff's past medical history, but there doesn't seem to be any clinical evidence supporting this diagnosis. (Tr. 305).

Plaintiff returned on November 8, 2012 with "recurrent pain, swelling and cramping in her hands." (Tr. 350, 361, 385). Next to "musculoskeletal," Dr. Babiker wrote, "Patient denies muscle weakness, joint pain or back pain. Patient complains of swelling and cramping in both her hands." (Tr. 351, 362, 386). He again confirmed his assessment of unspecified multiple site osteoarthritis. (*Id*.).

On November 27, 2012, Plaintiff saw Dr. Babiker for increased pain in her jaw, hip, and hands. (Tr. 364, 381). Again, Dr. Babiker found "no clubbing, cyanosis, or edema. Grossly normal motor and strength." (Tr. 365, 382). However, he did not diagnose Plaintiff with unspecified multiple site osteoarthritis after this visit. (Tr. 366, 383).   Rather, his neurologic assessment of Plaintiff was normal. (Tr. 365, 382).

On March 18, 2013, Plaintiff complained of pain in her left wrist. (Tr. 378). Dr. Babiker noted tenderness in her wrist, but no swelling. (Tr. 379). He took an X-ray of her wrist and found only a sprain. (Tr. 380, 419). He again diagnosed her with unspecified multiple site osteoarthritis. (*Id*.).

Plaintiff was admitted to Northeast Alabama Regional Medical Center on May 10, 2013 with an elevated blood pressure, because she didn't refill her blood pressure medication. (Tr. 398-399). The admitting physician wrote, "Rest of examination is unremarkable including neurological examination." (Tr. 402). The physicians placed her on her regular blood pressure medication, and she was released four days later. (Tr. 399).

Plaintiff's last recorded visit with Dr. Babiker occurred on July 29, 2013. (Tr. 416). Plaintiff had pain in her right knee and hand, but denied "muscle weakness, joint pain or back pain." (*Id*.). Dr. Babiker nevertheless confirmed his diagnosis of unspecified multiple site osteoarthritis. (Tr. 417).

On July 28, 2013, Dr. Babiker completed a medical statement in which he opined that "plaintiff had Type II diabetes and neuropathy, which caused her to be able to work no hours per day, stand for only 15 minutes at a time, sit for 60 minutes at a time, and occasionally balance." (Gov.'s Mem. 8; Tr. 31, 403). He asserted that Plaintiff could stand/walk and sit for 0-2 hours out of every 8-hour workday, could not lift any weight, and could not "use her hands for repetitive fine manipulation or her feet for repetitive operation of foot controls." (Gov.'s Mem. 8; Tr. 31, 405). He further opined that Plaintiff could not work in any capacity and would never be able to return to work. (Gov.'s Mem. 8; Tr. 31, 404-406).

Plaintiff also underwent a medical exam requested by the Disability Determination Service and performed by Dr. Sathyan Iyer. (Tr. 369). Dr. Iyer wrote that Plaintiff could stand without assistance, walk on her heels and tiptoes, and squat partially. (Tr. 370). She also had full range of motion of the shoulders, elbows, hips, ankles, knees and wrists (Tr. 370-371). Dr. Iyer did, however, note that there was slight tenderness over the right hand and knees. (Tr. 371). His overall impression was that Plaintiff did not "appear to have any significant physical limitation. However, depending on the activity state of the fibromyalgia problem, she could have impairment of functions." (Tr. 372).

## III. ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

Under the third step of this analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ then determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the final portion of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 1, 2012, the alleged onset date. (Tr. 18).  While the ALJ disagreed with Dr. Babiker with respect to his finding of diabetes-related neuropathy and arthritis, she found that Plaintiff suffers from the following severe impairments: obesity, hypertension, diabetes mellitus—Type II, fibromyalgia, and mood disorder. (Tr. 18, 27; Gov.'s Mem. 12). However, after taking into account the objective medical evidence and Plaintiff's subjective symptomology, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 24).

Considering the testimony of the Vocational Expert ("VE"), the ALJ found that although Plaintiff is unable to perform past relevant work, she nevertheless retains the residual functional capacity (RFC) to perform light work with limitations. (Tr. 26).[4] Plaintiff must work at a job that "allows for a sit/stand at will option, with the employer allowing changing positions every 45 minutes." (Id.). She must elevate her feet 6-12 inches. (Id.).  She can frequently use her hands for reaching and fingering, but she can never kneel, crouch, crawl, climb, work with hazardous machinery or work in extreme temperatures. (Id.). Furthermore, Plaintiff will not "require more than 2 unplanned absences a month." (Id.).[5]

---

[4] The ALJ gave "little to no weight to Dr. Babiker's opinion" in coming to its RFC finding. (Tr. 27).

[5] Although the ALJ's findings regarding Plaintiff's depression are not directly relevant to the issues raised on appeal, the ALJ found that Plaintiff can perform simple, routine tasks and concentration; occasionally interact with coworkers; and concentrate and maintain persistence or pace for 2 hours at a time over an eight-hour workday. (Tr. 26).

IV.    **Plaintiff's Argument for Reversal**

Plaintiff raises three issues on appeal: (1) the ALJ did not accord proper weight to Dr. Muzamil Babiker's opinion and failed to state specific reasons for rejecting that opinion (Pl.'s Mem. 11); (2) the ALJ's finding that Plaintiff retains the RFC to perform light work with limitations is not supported by substantial evidence (Pl.'s Mem. 16); and (3) the ALJ failed to apply Grid Rule 201.14 (Pl.'s Mem. 20).

V.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See*

8

*Martin*, 894 F.2d at 1529.   While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion

### A.      The ALJ Properly Considered the Opinion of Muzamil Babiker, M.D.

It is well established in the Eleventh Circuit that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, at 1140 (11th Cir. 1997), *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). Good cause to discount a treating physician's opinion exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, at 1241 (11th Cir. 2004).

The ALJ rejected Dr. Babiker's opinion because it was "not well supported by his treating notes." (Tr. 21). Specifically, his opinion was lacking in clinical evidence of hand or joint difficulties and neuropathy. (*Id.*) During Plaintiff's visits to Dr. Babiker from 2012 to 2013, she complained mostly of hip, knee, and hand pain. Despite these complaints, his treating notes consistently showed that the clinical examinations of the musculoskeletal and neurological systems were normal and that Plaintiff denied the presence of joint pain.  (Tr. 22, 347, 351, 362, 365, 382, 386, 389).

The ALJ concluded that there is nothing in Dr. Babiker's clinical observations that would support an arthritis diagnosis, let alone arthritis affecting unspecified sites. (Tr. 22) As the ALJ stated, "It is of course difficult to find a medically determinable impairment is present, much less

objective evidence to support it, if the doctor is unable to specify the location of the condition." (*Id.*).  Dr. Babiker never took an X-ray of Plaintiff's hands, ankles, or knees that would reveal the cause of her alleged joint pain. (*Id.*).[6]  Without medically determinable evidence of Plaintiff's alleged knee and hand pain, it was reasonable for the ALJ to conclude that Dr. Babiker's arthritis diagnosis was not supported.

Similarly, there was no objective evidence to support the presence of neuropathy (which Dr. Babiker found so limiting to the Plaintiff in his medical source statement). (Gov.'s Mem. 9; Tr. 21, 403). The word "neuropathy" is not mentioned in Dr. Babiker's treating notes. (Tr. 22).[7] While Plaintiff may have complained of pain, the record repeatedly denies "neurological compromise." (Tr. 22; Gov.'s Mem. 10).  During her 2012 and 2013 visits, Dr. Babiker consistently reported normal neurological functioning. (Tr. 347, 389, 402). In 2013, he planned to perform a nerve conduction study, which would have effectively confirmed or denied a neuropathy diagnosis, but the record shows no evidence that the study was ever completed. (Tr. 22, 417). Because Dr. Babiker never diagnosed Plaintiff with neuropathy in his treating record, the ALJ's decision to reject his opinion was reasonable.

Dr. Babiker's opinion is also inconsistent with other record evidence, including the consultative exam performed by Dr. Iyer and Plaintiff's day-to-day activities.  While Dr. Babiker opined that Plaintiff would never be able to return to work due to the severity of her impairments, Dr. Iyer reported that she did not "appear to have any significant physical limitation." (Tr. 372). The ALJ gave some weight to this opinion by adjusting her determination

---

[6] Both the ALJ and the Government assert that Plaintiff's hand X-ray was negative for arthritis, but the record reflects the X-ray was actually of the wrist. (Tr. 419). Regardless, Dr. Babiker took no X-rays that would have provided clinical evidence of his arthritis diagnosis.

[7] In fact, the only neuropathy diagnosis prior to Dr. Babiker's in his medical source statement appears in the medical record from Plaintiff's admission into Stringfellow Memorial Hospital in 2011. (Tr. 305). However, there does not appear to be any clinical evidence to support this diagnosis.

to accommodate the probable existence of fibromyalgia. (Tr. 20, 24). Plaintiff's lack of any "significant physical limitation" is reflected in her daily activities as well. (Tr. 19, 62-63). This evidence contradicts Dr. Babiker's opinion, and the ALJ had good cause to discount his opinion.

Furthermore, Dr. Babiker's opinion on issues relating to Plaintiff's ability to work is not entitled to weight. This is because it is not a medical opinion, but rather an opinion "reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p; *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Opinions that are reserved to the Commissioner, even if offered by a treating physician, are not "entitled to controlling weight or special significance." *See* SSR 96-5p. (Gov.'s Mem. 7).

### B.   Substantial Evidence Supports the ALJ's RFC Determination that Plaintiff Has the Capacity to Perform Light Work.

Plaintiff argues in her brief that the RFC assessment was conclusory in that the ALJ found that Plaintiff was able to perform light work, but incapable of performing her past relevant work, which was sedentary. (Pl.'s Mem. 16-17). This assertion ignores the fact that an RFC determination encompasses more than the "exertional level" of a particular job. (Gov.'s Mem. 13). In deciding that Plaintiff retained the RFC to perform light work, the ALJ factored in additional limitations, including those that would have prevented Plaintiff from performing her past relevant work. (Gov.'s Mem. 13; Tr. 26-27, 36).

Plaintiff argues the ALJ should have accorded greater weight to her complaints of hand pain and numbness before making the RFC determination. (Pl.'s Mem. 17). The court disagrees. The ALJ found Plaintiff's complaints to be mostly subjective and unsupported by the record. (Tr. 27 ,32, 33, 35). Dr. Iyer's examination combined with the overall lack of objective evidence of

11

arthritis or neuropathy in Dr. Babiker's records suggests that Plaintiff likely had "normal extremities, grip strength, and muscle power." (Tr. 27, 29, 31, 32, 35, 370).

While Plaintiff concedes that the ALJ summarized the medical evidence, she further contends that the RFC itself is conclusory, because it does not cite any rationale or supporting evidence. This argument is apparently based on SSR 96-8p, which requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." (SSR 96-8P, 1996 WL 374184; Pl.'s Mem. 17). As the Government correctly states, "Even a cursory reading of the decision belies Plaintiff's argument." (Gov.'s Mem. 15). The ALJ more than adequately described her analysis of Plaintiff's medical records, the weight accorded to the physicians' opinions, and the reasoning behind the decision. (Tr. 21-22, 28-36). Plaintiff has not demonstrated error. [8]

In support of her argument, Plaintiff points to *Thomason v. Barnhart*, 344 F.Supp.2d 1326 (N.D. Ala. 2004) (holding that the ALJ's RFC assessment was invalid because the record did not contain any "formal assessment" by either examining or non-examining physicians addressing the claimant's ability to perform work activities) and *Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003) (holding that the ALJ's RFC assessment was invalid because no physical capacities evaluation was conducted.). However, Plaintiff's reliance on *Thomason* and *Coleman* is off the mark. In this case, Plaintiff's treating physician as well as the consultative

---

[8]  Moreover, even if the ALJ did not follow an SSR, remand is unnecessary unless the claimant proves that she was prejudiced as a result of the noncompliance. In this case, Plaintiff has not shown that she was prejudiced. *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011) (noting "we have held that an agency's violation of its own government rules must result in prejudice before we will remand to the agency for compliance.").

examiner performed a formal assessment and a PCE which addressed Plaintiff's working abilities.[9]

###### C.     The ALJ Did Not Err in Relying upon the VE's Testimony as Part of the Five-Step Determination.

Plaintiff's final argument faults the ALJ for relying on VE testimony instead of Medical-Vocational Guideline Rule 201.14 in determining Plaintiff could perform other work.  (Pl.'s Mem. 20-21). However, the problem with Plaintiff's argument is that the Rule applies to claimants who are limited to sedentary work only. The ALJ found that Plaintiff was not limited to sedentary work alone; she is instead limited to light work with additional restrictions. (Tr. 26-27).

Plaintiff conflates the distinction between the grid guidelines by asserting that because she was limited to a reduced range of light work, it follows that she would fall into the sedentary work category. (Pl.'s Mem. 21). In cases where a Plaintiff's exertional limitations cannot neatly fit into one of the regulatory definitions specified in the grid, SSR 83-12 directs the ALJ to "consult a vocational resource." (Gov.'s Mem. 17; SSR 83-12, 1983 WL 31253). The ALJ properly assessed the Plaintiff's RFC by consulting a VE. After doing so, the ALJ determined that Plaintiff was not disabled. His findings related to that determination are supported by substantial evidence.

### VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this

---

[9] Plaintiff's treating physician, Dr. Babiker, performed the PCE. (Tr. 403-406). The ALJ's decision, the Government's brief, and this opinion explain why weight was not given to Dr. Babiker's examination. (Tr. 13-42; Gov.'s Mem. 8-12).

determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate

order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 1, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14